FILED
COURT OF APPEALS
DIVISION II

2013 AUG -6 AM 9: 15

STATE OF WASHINGTON

BY_____
          DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 42725-7-II |
| Respondent, | UNPUBLISHED OPINION |
| v. | |
| ROBERT GARCIA JR., | |
| Appellant. | |

BJORGEN, J. — A jury returned verdicts finding Robert Garcia Jr. guilty of three counts of

first degree child molestation—domestic violence for conduct against his granddaughter, LG.[1]

Garcia appeals his convictions, asserting that the trial court erred by admitting at trial evidence of

his prior uncharged sex offenses under RCW 10.58.090 and ER 404(b). We affirm.

## FACTS

During her childhood, LG and her two younger brothers would often visit their

grandfather, Garcia, at Garcia's home in Fife, Washington. The children would usually stay

overnight at Garcia's home when they visited. During one of the overnight visits, when LG was

approximately 4 or 5 years old, Garcia called LG into his bedroom while her brothers were

sleeping in the living room. When LG came into Garcia's bedroom, he told LG "to get on top of

him and made [her] grab his penis over his pajamas." Report of Proceedings (RP) at 76, 86. On

---

[1] We use initials to identify the minor victim under this court's General Order 2011-1, which
order states in part, "[I]n all opinions, orders and rulings in sex crime cases, this Court shall use
initials or pseudonyms in place of the names of all witnesses known to have been under the age
of 18 at the time of any event in the case."

another occasion when LG was around the same age, Garcia stuck his hand into LG's pants under her underwear and touched her vagina. Also when LG was 4 or 5 years old, Garcia told her to take off her pants and to show him her underwear.

On a couple of occasions when LG was around 10 years old, Garcia touched her breasts through her clothing. On another occasion when LG was around 10 or 11 years old, Garcia came into the bathroom while LG was showering, told her to take off her towel, and stared at her body. Over the years, Garcia would often force his tongue into LG's mouth when they kissed and would request that she put her tongue in his mouth. Garcia's sexual conduct against LG stopped when she entered high school.

When LG turned 17, she disclosed Garcia's behavior to a friend she had met online. A couple of months later, LG disclosed the abuse to her mother, LG-G,[2] and later to her aunt. Sometime after her disclosure to her aunt, LG reported Garcia's behavior to the police. On August 3, 2011, the State charged Garcia by third amended information with three counts of first degree child molestation with a sentencing aggravator on each count alleging that Garcia used his position of trust to facilitate the commission of the offenses.

Before trial, the State moved to admit evidence of Garcia's prior uncharged sex offenses under RCW 10.58.090 and ER 404(b). Specifically, the State sought to present evidence that Garcia had previously abused his daughter, LG-G, when she was a child. After hearing arguments on the State's motion, the trial court orally ruled:

> The evidence based on the offer of proof in support of the motion is admissible for the following reasons: One, under 10.58.090, the Court finds that it

---

[2] Because LG-G shares a last name with the child victim, we use her initials to protect the child victim's privacy.

is constitutional. Under 404(b)—and I will go through the other factors in a moment. Certainly under 404(b) evidence of other misconduct, and the Court does note that these are not charges or convictions. But evidence of other misconduct for purposes other than proof of general character is admissible. The other purposes offered by the State include the opportunity, intent, preparation, absence of mistake, or accident in terms of the similarity of the offense or the touching between [LG-G] and [LG] both going for a period of approximately ten years, ending when each of the girls were 13 or 14. The similarity of the types of offense or touching, fondling, kissing, over the clothes, similarity of the words, both the similarity in positions of trust and influence over both girls, despite the testimony that appears to be consistent that Mr. Garcia was fun to be with.

Factor B, closeness in time. That has a variety of interpretations. In this case, the interpretation is the age when the alleged offenses began and when they terminated, rather than the closeness in time between [LG-G's] and [LG's] alleged touching.

The frequency from the offer of proof appears to be very consistent in terms of the frequency and type. Intervening circumstances in the case of [LG-G]: Went off to the Military when she was 18 and returned to this area.

The necessity of the evidence, the Court certainly agrees, [defense counsel], the information is prejudicial. The necessity of the evidence is probably the most compelling in these types of cases because these types of cases present with no forensics, no medical evidence, no witnesses. In Mr. Garcia's case, there are no convictions. But the court finds that the probative value substantially outweighs the clear prejudice to the Defendant.

RP at 46-47. The trial court also entered written findings stating in part:

1. The court finds that under RCW 10.58.090, the other sex offense evidence proposed by the State is sufficiently similar to the charged allegations, that the age when the molestation began of [LG-G] and [LG] was sufficiently similar to one another, that there did exist intervening circumstances between when [LG-G] was molested and when [LG] was molested, that the prior acts occurred frequently, and that the evidence is necessary to the State's case all weigh in favor of admission.

2. The court finds that the probative value of the other sex offense evidence outweighs any potential prejudicial effect.

. . . .

7. The court finds that evidence of other sex offenses is admissible pursuant to ER 404(b) because the evidence demonstrates opportunity, common scheme or plan, absence of mistake or accident, motive, and intent. In balancing the probative value of the evidence against any potential prejudicial effect, the court finds that the probative value outweighs any potential prejudicial effect.

Clerk's Papers (CP) at 228-29.

At trial, LG testified consistently with the facts as stated above. Additionally, she testified that, apart from the abuse, she had enjoyed spending time with Garcia and that she still loved him despite what had happened.

LG-G testified that Garcia had touched her inappropriately whenever her mother left them alone together, beginning when she was 4 years old and ending when she was 14 years old. LG-G stated that during those years, Garcia would force her to put her mouth on his penis. LG-G also stated that on one occasion Garcia performed oral sex on her. LG-G further testified that during a road trip, Garcia had touched her vagina in the backseat of a car while her mother drove and her brother sat in the front passenger seat. Finally, LG-G testified that Garcia had tried to stick his tongue in her mouth when he kissed her but that she bit his tongue and told her mom about the incident. LG-G stated that after telling her mom about the kissing, Garcia said to her that he would go to jail or that he would kill her if she told again. LG-G indicated that because of this threat, she did not further disclose any of Garcia's abuse against her.

The jury returned verdicts finding Garcia guilty of three counts of first degree child molestation—domestic violence, and entered special verdicts on each count finding that Garcia used his position of trust or confidence to facilitate the commission of the crime. Garcia timely appeals his convictions.

## ANALYSIS

Garcia contends that the trial court erred by admitting evidence of his prior uncharged sex offenses under RCW 10.58.090 and ER 404(b). Our Supreme Court has held that RCW

No. 42725-7-II

10.58.090 is unconstitutional because it violates the separation of powers doctrine.[3] *State v. Gresham*, 173 Wn.2d 405, 432, 269 P.3d 207 (2012). Accordingly, we turn to whether the trial court properly admitted evidence of Garcia's prior uncharged sex offenses under ER 404(b).

We review the admission or exclusion of evidence under ER 404(b) for abuse of discretion. *State v. DeVincentis*, 150 Wn.2d 11, 17, 74 P.3d 119 (2003). A trial court abuses its discretion when it bases its decision on unreasonable or untenable grounds. *State v. Rafay*, 167 Wn.2d 644, 655, 222 P.3d 86 (2009).

ER 404(b) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Evidence of a person's prior misconduct is admissible when the party seeking to admit the evidence (1) demonstrates by a preponderance of the evidence that the misconduct occurred, (2) identifies the purpose for the evidence's admission, and (3) establishes the evidence's relevance to proving an element of the charged crime, and the trial court (4) weighs the evidence's probative value against its prejudicial effect. *Gresham*, 173 Wn.2d at 421. The trial court must conduct this analysis on the record. *State v. Acosta*, 123 Wn. App. 424, 433, 98 P.3d 503 (2004).

Garcia first asserts that the trial court erred in admitting evidence of his prior uncharged sex offenses under ER 404(b) before finding that the sex offenses occurred by a

---

[3] RCW 10.58.090 provided in part:
In a criminal action in which the defendant is accused of a sex offense, evidence of the defendant's commission of another sex offense or sex offenses is admissible, notwithstanding Evidence Rule 404(b), if the evidence is not inadmissible pursuant to Evidence Rule 403.

preponderance of the evidence. We disagree. In ruling on the admissibility of prior bad acts evidence under ER 404(b), a trial court may rely on the State's offer of proof to determine that the acts occurred by a preponderance of the evidence. *State v. Mee*, 168 Wn. App. 144, 154-55, 275 P.3d 1192, *review denied*, 175 Wn.2d 1011, 287 P.3d 594 (2012) (citing *State v. Kilgore*, 147 Wn.2d 288, 294-95, 53 P.3d 974 (2002)).

> Requiring an evidentiary hearing in any case where the defendant contests a prior bad act would serve no useful purpose and would undoubtedly cause unnecessary delay in the trial process. In our view, these hearings would most likely degenerate into a court-supervised discovery process for defendants. . . . We believe, in the final analysis, that the trial court is in the best position to determine whether it can fairly decide, based upon the offer of proof, that a prior bad act or acts probably occurred.

*Kilgore*, 147 Wn.2d at 294-95.

Here, the State's offer of proof alleged that Garcia had sexually molested his daughter, LG-G, from the time LG-G was 4 years old until she turned 14 years old and described the specific instances of Garcia's alleged sexual conduct against LG-G. The trial court did not hold an evidentiary hearing and, instead, exercised its discretion to admit the evidence in reliance on the State's offer of proof. *Kilgore*, 147 Wn.2d at 294-95. At trial, LG-G testified consistently with the State's offer of proof. Accordingly, we hold that substantial evidence in the record supported a finding that Garcia's alleged prior bad acts occurred by a preponderance of the evidence and that the trial court did not err by admitting ER 404(b) evidence in reliance on the State's offer of proof.

Next, Garcia contends that the trial court erred in admitting evidence of his uncharged sexual offenses against LG-G for one of the purposes allowed by ER 404(b). We disagree and

hold that the trial court properly admitted the prior bad acts evidence under ER 404(b) to show a common scheme or plan.[4]

As an initial matter, Garcia asserts that this court cannot affirm the trial court's admission of ER 404(b) evidence to show a common scheme or plan exception because the trial court did not admit the challenged evidence for that purpose. However, the trial court's written findings clearly state, "The court finds that evidence of other sex offenses is admissible pursuant to ER 404(b) because the evidence demonstrates opportunity, *common scheme or plan*, absence of mistake or accident, motive, and intent." CP at 229 (emphasis added). Moreover, even if the trial court had not admitted evidence of Garcia's prior uncharged sex offenses to show a common scheme or plan, we "may affirm a lower court's ruling on any grounds adequately supported in the record." *State v. Costich*, 152 Wn.2d 463, 477, 98 P.3d 795 (2004).

Prior bad acts evidence is admissible to show a common scheme or plan under ER 404(b) where (1) "'several crimes constitute constituent parts of a plan in which each crime is but a piece of the larger plan' and (2) where 'an individual devises a plan and uses it repeatedly to perpetrate separate but very similar crimes.'" *Gresham*, 173 Wn.2d at 422 (quoting *State v. Lough*, 125 Wn.2d 847, 854-55, 889 P.2d 487 (1995)). Garcia's case falls within the second type, a single plan or scheme followed in perpetrating separate but very similar crimes.

Evidence within the second type of common scheme or plan is admissible if the prior bad acts and the charged crime demonstrate, "'such occurrence of common features that the various acts are naturally to be explained as caused by a general plan of which' the two are simply

---

[4] Because we hold that the trial court properly admitted evidence of Garcia's prior uncharged sex offenses under the common scheme or plan exception to ER 404(b), we need not address whether the evidence was admissible for one of the other allowable purposes under ER 404(b).

'individuals manifestations.'" *Gresham*, 173 Wn.2d at 422 (quoting *Lough*, 125 Wn.2d at 860). "Mere 'similarity in results' is insufficient." *Gresham*, 173 Wn.2d at 422 (quoting *Lough*, 125 Wn.2d at 860). "[W]hile the prior act and charged crime must be markedly and substantially similar, the commonality need not be 'a unique method of committing the crime.'" *Gresham*, 173 Wn.2d at 422 (quoting *DeVincentis*, 150 Wn.2d at 21). When reviewing whether a trial court properly admitted prior bad acts evidence under ER 404(b) to show a common scheme or plan, we look to the "*similarity* between the prior acts and the charged crime rather than the *uniqueness* of the individual acts." *DeVincentis*, 150 Wn.2d at 19.

In *DeVincentis*, 150 Wn.2d at 22, our Supreme Court held that there was a sufficient similarity between the defendant's prior bad acts and the charged offenses where in both instances the defendant (1) "devised a scheme to get to know young people through a safe channel, such as a friend of his daughter, or . . . as a friend of the next-door neighbor girl[,]" (2) created an apparently safe but isolated environment in which to sexually abuse his victims, (3) victimized girls between 10 and 13 years old, (4) walked around his house in a bikini or g-string, and (5) carried out similar sex acts with the victims. Also in *Gresham*, 173 Wn.2d at 422, our Supreme Court upheld the admission of prior acts of child molestations to show a common scheme or plan where in each instance, the defendant "took a trip with young girls and at night, while the other adults were asleep, approached those girls and fondled their genitals." The *Gresham* court reasoned that slight differences in details between the prior bad acts and the charged crimes, such as the presence or absence of oral sex and the fact that only some of the prior acts occurred in the defendant's home, did not outweigh the fact that "the remaining details share[d] such a common occurrence of fact with the molestation of [the victim of the charged

crime]." *Gresham*, 173 Wn.2d at 423. In *State v. Sexsmith*, 138 Wn. App. 497, 505, 157 P.3d 901 (2007), Division Three of this court upheld the admission of prior acts of child molestation to show a common scheme or plan where the defendant was in a position of authority over both victims, the victims were about the same age when the defendant molested them, the defendant isolated the victims when he molested them, and he forced the victims "to take nude photographs, to watch pornography, and to fondle him."

Here, as in *DeVincentis, Gresham*, and *Sexsmith*, there was a substantial similarity between Garcia's prior bad acts and the charged offenses such that the trial court properly admitted the evidence under ER 404(b) to show a common scheme or plan. Garcia (1) was a close family member of both LG and LG-G, (2) began sexually abusing both victims when they were around 4 years old, (3) stopped abusing both victims when they were around 14 years old, (4) was in a position of authority over both victims, (5) repeatedly kissed or attempted to kiss both victims by sticking his tongue in their mouths, (6) fondled both victims' private parts from underneath their clothing and, (7) made each victim touch his penis.

Garcia argues that *State v. Sutherby*, 165 Wn.2d 870, 204 P.3d 916 (2009), commands a different result. However, Garcia's reliance on *Sutherby* is misplaced. In that case, our Supreme Court reversed the defendant's convictions based on his defense counsel's ineffective assistance in failing to move to sever his charges for possession of child pornography from his charges for child rape and child molestation. *Sutherby*, 165 Wn.2d at 888. When analyzing the defendant's ineffective assistance of counsel claim, our Supreme Court noted that, had the defendant's charges been severed, evidence relating to his possession of child pornography would not have been admissible under ER 404(b) to prove child molestation or child rape. *Sutherby*, 165 Wn.2d

at 886-87. This analysis in *Sutherby* merely related to the prejudice prong of an ineffective assistance of counsel claim and does not have any bearing on the common scheme or plan analysis as stated in *DeVincentis, Gresham,* and *Sexsmith.* Moreover, even if *Sutherby* applied to our analysis here, it is factually distinguishable because there the defendant's conduct in possessing child pornography was not sufficiently similar to his conduct in committing child rape and child molestation.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

BJORGEN, J.

We concur:

HUNT, P.J.

PENOYAR, J.

10